We have four cases on for argument today. The first one is number 2010, 1345, HITACHI HOME ELECTRONICS against the United States. Mr. Weiss? Thank you, Your Honor. May it please the court, Your Honors, the question to be decided in this case is what occurs when customs does not deny a taxpayer's protest within two years of the filing of that protest. The clear and unambiguous words and meaning of the statute, the regulations, the legislative history all require that customs allow or deny the protest within two years. There is no exception permitted and no exception allowed. And there is no contrary indication anywhere in the statute or the legislative history that customs may go beyond the two years. Does the statute specify any consequence for the failure to meet that two-year period? There are only two possibilities, Your Honor, at the conclusion of the two years. And that is allow or deny. Deny must be expressed. It must be with notice. It must be with reasons. And Congress specifically rejected the that. What is the consequence specified? The consequence is if it's not because it's a failure. Let me finish. There's a failure to allow or deny. Well, there's a failure to deny. And the allow at the expiration of two years is automatic by operation of law. Well, if there's a failure to deny, there can be a deemed denial. Well, Congress specifically rejected the concept of deemed denial. Under the previous act and also under the proposal submitted by customs, which became part of the Customs Courts Act of 1970, there were three options. There was the option of denial. There was the option of allowance. And there was the option of nothing having occurred, in other words, nothing. Congress said in the legislative history and specifically repeatedly over and over again, we are rejecting that. Customs no longer has the option of not to do anything. Customs must allow or deny within the two years. And the denial must be expressed. And the allowance need not be expressed. There's nothing anywhere in any statute or regulation of the United States which says how an allowance is made known. An allowance occurs at the conclusion of two years if nothing occurred during the pendency of the two years. Or within the two years, if customs explicitly allowed  they don't call it an allowance. They call it an approval. That is also an allowance. But since Congress specifically said they are doing away with the option of nothing occurring within the two years, there's only two options. It's A or B. It's denial or allowance. They didn't deny here. Everybody agrees that they didn't deny the 10 protests here. And they allow them at the conclusion of two years. This is a statute. If Congress included the language, what happens if there is a denial? The issuance of a denial letter and such. Why didn't it say what's to happen if there's an allowance? Why did it remain silent on that point? Because typically, when something occurs by operation of law, nothing happens. You have that in 1504A, where liquidation occurs by operation of law. No notice is given. In 1515B, when something occurs by operation of law, no notice is given. And that's typically what happens. The whole point of not giving any kind of notice for allowance, not refusing to provide any kind of notice for allowance, is because that it occurs, or it can occur, by operation of law at the conclusion of the two years. What does the word allowance mean, or allowed to in the context of customs at the time that this statute was written? Words are interpreted according to the common meaning at the time. The common meaning at the time, the contemporary meaning as I set out in the brief, is the failure to prevent the opposite event from occurring, or inaction, approving something by inaction, or failing to deny it. Here, in this context, the context of this statute is that customs must either explicitly deny the protest, or it fails to deny the protest. This statute is an on-off switch. You want to know what customs did. Is it on or off? Did customs deny it? We know that they didn't deny it. That leaves, in logic and in English, only one alternative. That's allow. That's what allow means in English, and meant in English at the time, and also today. And that's what customs provided for. And in addition, the legislative history specifically says that when Congress rejected customs proposal for this permitting customs to do anything, and having a deemed denial at the conclusion of two years, the Senate Judiciary Committee specifically said, instead of doing this, we're going to put in a system where you allow or expressly deny. They said it. I mean, they said it explicitly. But didn't Congress create a process by which you could actually get a denial? And that was obligatory on the part of customs. And that was under Section B, under the accelerated disposition. Yes, Your Honor. But there are two things involved with that. That's completely at the discretion of the importer. Customs has no right to. But you chose not to follow that route. You could have had your denial and been in court. But that is operational only within the two years. That's also clear. Well, where do you get that from the statute? It seems to me you only are right about that if you're right about your argument with respect to A. Well, I think the legislative history, again, makes it clear. Maybe not even if you're right about A. The legislative history makes it clear, again, that when in both the House report and in the statements of the sponsors, the only statements made when this bill was passed or introduced, it said specifically that customs must dispose of, and they use the word dispose, must dispose of the protest within two years. They must do it. They have the maximum. They're obligated to do it. And in the very next paragraph, the very next sentence, they said, but if you want an accelerated disposition, then you can apply for an accelerated disposition under B. Well, if the disposition must occur within two years, that means that at the conclusion of two years, there's nothing left to accelerate, and there's nothing left to dispose. Customs clearly indicated in those provisions, which I cite as page six or seven in the reply brief, that at the end of two years, the case is over at customs. There's been a disposition. And that's a very, very long time. Isn't there another way to read this that if you want a quick decision from customs, then you go under section B. If you want to wait for two years or longer, you go under section A. That was precisely the point of the statute, Your Honor. Under the previous. And you chose to go under A to wait the two year route or longer, because that was customs' practice at the time. They were taking longer than two years, not just in this case, but in other cases as well. And you chose not to go for a quick decision under subsection B. Subsection B is not a quick decision at all. Subsection B is saying that customs has 30 more days to dispose of the case, and then you have to go into court. The reading that the government gives to subsection B is that it obliterates the requirement for customs to decide a case administratively at all, ever. And that was the whole point of the Customs Courts Act of 1970, to get the 640,000 cases out of the customs court and get them into customs for customs to decide it administratively. Customs does make an administrative review under subsection B, don't they? No, not necessarily. Customs doesn't have to do anything. There's no requirement under subsection B that customs do anything. There's no requirement to act whatsoever. Subsection B says, you file this letter, and then it's Subsection B says that a protestor has not been allowed or denied in part within the first 30 days. So they do review, and they do allow or deny in part. And if they don't deny, then it's deemed denied. There's no requirement in B for them to act. However, there is a provision that says that if at the end of 30 days they do not allow or deny, then it's deemed denied for the purposes of going to court under 2631. But they're not required in the statute in B to do anything. They don't have to. They're not required to review. They're not required to allow or deny. They're requested to allow or deny. But at the end of 30 days, if they do nothing, which is what they do typically, I think, under B, then the importer then has the opportunity to go to the Court of International Trade, which is the whole purpose of Section B. That if the importer doesn't want to wait two years to have his decision decided administratively, or if the importer wants to go to court to begin with, then the importer can go to court immediately as soon as he could under the old statute, which is 90 days. You had to wait an additional 30. Now you can go immediately. And so it brought the importer back to the position he was in in 1970. It saved the importer that time. It did not give the Customs Service the right to decide protest more than two years later. Mr. Weiss, you briefed pretty strenuously on the word shall. And I am not convinced that shall is obligatory in this case. What is it that you can tell me about the legislative history that would indicate to this court that Congress intended that there be an allowance, meaning that the liquidation is approved as applied for, or the protest, rather? The shalls go to the taxpayer rights, that this is a provision for taxpayer rights. And it goes to the point that the Customs must act within the two years. And within that parade of shalls, shall refund, et cetera, there is a provision that Customs inserted saying, but subject to the two year limitation prescribed in the first sentence of this subsection. So Customs is saying, within that parade of shalls, within these commands to Customs to allow or deny within two years, they're saying, you must do it. You must pay attention to our command that this is a two year statute. And if you don't explicitly deny, as the Senate report specifically said, if your choices are to allow or expressly deny. You may have misunderstood my question. My question is this. Assume that I don't believe that shall is obligatory, that the usage of the word shall by Congress here was merely directive or to provide guidance. And it's not obligatory. What is it that you can tell the court that would support your argument that if there's not a decision made within two years, that the protest is either denied or that it's allowed? And I'm interested in the allowed part. Well, there are two things. First of all, this change was made in the context of what is now more than a century of precedent in this circuit, which says that when Customs is given a specific time to review a protest, that time is obligatory and maximum and can't be exceeded. And anything that occurs afterwards is null and void. That's the context in which Congress enacted this statute and knew about that interpretation of the law. And so shall for this statute was obligatory for Customs. And then Congress specifically said, we are switching the defaults here. Instead of denied, deemed denied after the two years, it is expressly allowed or expressly denied after the two years. What's the support for that assertion in the legislative history? It's at page 25 of the brief. And I think that was at page 25 of your principal brief? Yes, in the discussion of what Congress did at the time of the enactment. You just said that they adopted the notion that at the end of two years, there would be a deemed allowance, in effect. I said what they said was allowed or expressly denied. That's what they said, which means to me that it's an allowance. We never called it a deemed allowance. We've said throughout, below and here, that it's allowed after the conclusion of two years, it's allowed, unless it's expressly denied before then. Your Honor, I reserve the balance of my time for rebuttals. Thank you. Ms. Williams? May it please the court. I would like to address a couple of the points raised by Hitachi. The first one is the very first thing that Hitachi said, which was, as the statute is written now, customs can either deny or allow a protest. And according to Hitachi, allow is, and I'll quote, automatic by operation of law if it is not denied. The statute itself expressly says that's not true. The statute says customs shall allow. That demonstrates Congress intended that customs will actively do something. There will not be an allowance by operation of law. So the face of the statute directly tells us that Hitachi's argument is wrong. There was not an intended, deemed allowance at all, that they did not. What are the language, just following the sentence of that provision that you read in the statute, it goes on and says, and this is where it says, shall allow or deny such protest in whole or in part. Then it goes on to read, thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded. Isn't Congress saying what allowance means in that case? It means you pay up. All that sentence says is what it says, which is if you found, which implies that customs found, there was duties, I mean, duties to be refunded, you refund them. I think it's black and white, which is saying is customs doesn't keep money that it found, it doesn't belong to it. So allow means you refund the money, and then the statute goes on and says if you deny, you issue a letter of denial, and that allows the individual or the company to go and file a challenge. The second sentence doesn't say the word allow in it. It just says you refund money. The only time you refund money is when you determine that a protest is correct and we owe money. So the implication is if you allow a protest, customs is going to refund the money. But the sentence itself doesn't actually use that word, so I don't want to read into it something that doesn't appear there. So I don't know if I'm directly answering your question. When you refund money, is it because you approved the protest, the application for the protest? Yes. Isn't that allowing it? It would be allowed, yes. So I'm saying if you allow a protest, this sentence comes into play. That is true. But I think the critical one, which tells us that in here there are no deemed allowance, is the sentence before it, where it says customs shall allow or deny. That tells us that customs is the actor. It is not something that occurs by operation of law. And that's what Hitachi's argument is based on, is you read out the words customs shall allow, that that allow means that it can happen also by operation of law. And in the past, when Congress intends something to happen by operation of law, it expressly writes it. In 1504, in 1515b, it has said it deemed liquidates or it deemed denies. They use the actual language. Never has Congress just implied such a huge. But that's a different situation, isn't it? When you deem liquidation, that's a totally different customs transaction than allowing a protest. That is true, but the concept is the same. You don't have something deemed unless Congress tells you that it can deem. In other words, something doesn't deem liquidate simply because it doesn't liquidate timely, unless Congress has told us that can occur. So when Congress intends something to occur by operation of law, it always tells us that. It puts it in a statute. I want to address also a little bit about the legislative history. Since the time that this was enacted, and Customs was very active in appearing before Congress and testifying, and in fact, Customs appears from the legislative history to have set the time limits themselves. And there was a lot of discussion as to the time limits. Has Customs ever gone back to Congress since that time and said, gee, we need more time, or we want to make sure that this allowance doesn't operate as a matter of law? With regard to your first question, I am not aware of it. But Customs has a large and strict amount of internal processes they use to ensure that protests get decided within two years. The courts get reminders when something's running up against the deadline. It's not a deadline they ignore. It gets passed when you have cases like this, where protests are suspended, perhaps pending an AFR, pending a court case. There are reasons that they go beyond the two years. So with regard to your first point, Customs, as far as I know, hasn't gone to Congress because they pay attention to the two years. And the only time it's surpassed is when there's a reason for it. And I've forgotten the second half. I'm sorry. You had part two, which I forgot. You can go on. I think you hit on part two as well. Oh, OK. But that's what I was going to say next, was if we were to buy Hitachi's argument, it would have an enormous impact here. Because all of those protests that are suspended, waiting an AFR, a court case, would automatically get allowed. That would flood the system, because we'd have to, in order to prevent things from getting automatically allowed, deny that, even though we would. I assume that if we were to decide tomorrow that this allowance is the consequence of exceeding the two years, you would just have letters, standard letters, go out on the 720th day, which would say your protest is denied, right? That's probably what would happen. And that would cause an enormous amount of cases. It makes no sense, because now you have cases where Customs is trying to decide a legal issue. They'd have to deny it. And the courts would be forced to deal with thousands of cases, all which deal with the same issue. But what if we found that you had to allow those cases you don't deny, then they would be allowed? Then all you'd have to do is refund the monies that are being sought, whether it's drawback, or excess duties, or questions as to the MFN rate, or whatever. Customs would have to refund the money. And that would mean that you'd end up with goods that are reclassified incorrectly, because Customs didn't have the time to ascertain, or the court was working on, what's the proper classification? You'd have to refund all this money. If you didn't have the time to ascertain in that situation, shouldn't you be going to Congress with this problem? The two year? Hitachi should, absolutely. If they feel that it's- But not Hitachi, Customs. But to Customs, it doesn't present a problem, because they comply with the two years unless they have a reason. They follow the statute. It doesn't say a consequence if you don't follow it. They haven't- No, but the statute doesn't say two years unless there's good cause. So that's the way, what you're telling us, I think, is that Customs has interpreted the statute, in effect, as saying, well, two years is a goal which we will observe when it's something we can efficiently do. But if we have good reason, we're not going to comply with the two year requirement. Customs believes the statute is directory, meaning it tells you what you're supposed to do, which is decide protest. But there's a difference between being directory, or mandatory, and being subject to a good cause exception. In other words, in a situation such as you cite Pierce County and Brock, there's no question that the obligation in that case was mandatory in the sense that it was not subject to an exception. The problem, of course, is that no consequence was specified. And the Supreme Court said, well, in that setting, we're not going to make up a remedy. But that's different, it seems to me, from saying that the proper reading is to say that this effectively has a good cause exception in it. I think every case in which the issue comes up, whether it's directory and there's a consequence, is essentially the case we have here. It's telling you to do something in a time period. What happens if you don't comply with that time period?  as a way of getting at this point, perhaps. Suppose that Hitachi decided they didn't want to go the 1515B route and decided instead to file an APA action to force customs to act within the period that it was required by statute to act. Do you think that that action would be A, cognizable, and B, that it would be one that Hitachi would be entitled to win on? The answer is no. And why? That is because, and this has come up, because in the Norman Jensen case, it's essentially what you're saying. The plaintiff in that case argued to the CIT. And I believe the action is pending before this court. It is before Judge Eaton was the trial court, if I remember correctly. In that case, the plaintiff came to court and said, I want my decision within those two years. I want a mandamus to order the customs to act. The court said no. There are two reasons. One, there's a jurisdictional problem. The Court of International Trade is a court of limited jurisdiction. In order to be heard, you have to come under 1581 somewhere. They moved under I. Under I, you have to show no other provision is manifestly inadequate. They can't show that because under A, you can't. That wasn't an APA action. It was an APA. What you're saying there is the CIT didn't have the authority under the APA. What if they had gone into the district court? Well, then the argument would be this is the nature of cases that should be heard by the CIT. I know I'm sounding very technical. But what you're saying is it shouldn't be over there because of 1581. It shouldn't be over there because it's an international trade matter. The court said the type of case belongs here. But you have to wait until it ripens into a protect. OK, setting aside that issue, assume that the district court would say, OK, I think this is a separate matter, sufficiently separate that I will entertain this evidence. The problem is in Norman Jensen, you have to get a mandamus to order the agency to act. In that case, in order to get a mandamus, you have to show you have no other adequate remedies to get to that. The court properly found in Norman Jensen that filing a protest will give you the reasoned. Are you talking about mandamus under 1361? Or are you talking about an order under 706 of the APA directing an agency to do that which it is obliged to do? From Norman Jensen, I don't remember which one. I'm sorry. Which the grounding of the mandamus, I don't remember. I'm sorry. But where I'm going with this is, and the next point is, in this case, with these protests, we know that customs, within a two-year period at most, is supposed to allow, deny, or deem to deny. So there is no law which requires customs to affirmatively study and affirmatively allow or affirmatively deny a protest. So I don't think you can get a mandamus to do something when you can have deemed allowance. And I don't know if I'm answering your question the way you wanted. All right, I'm clear enough, but I don't know. I understand what you're saying, I think. I interrupted you when you were about to turn to the legislative history. Would you like to go back there? I was just going to hit the high points of the legislative history. Boiled down, it's got a couple of points. One, Congress clearly intended they want protests decided in two years. That's the takeaway. There is no consequence, however, in the legislative history anywhere if you don't hit that two years. There's clearly no deemed liquidation, deemed denial. Congress felt- Well, what we're talking about is deemed allowance, I guess. Yes, but we know for sure they don't want deemed liquidation. Wasn't there discussion whether to have a deemed allowance in the legislative history? We have not been able to locate a mention, anything about the idea of a deemed allowance. It's never come up, which is critical because it's a very big concept. It would be an enormous change. You would think somewhere, somebody would have mentioned it. The last thing you can tell from the legislative history is Congress said, if you were concerned about delay, the importer is supposed to use accelerated disposition. There was a tool for importers here. They didn't feel that they were- They didn't leave them out to dry. They gave them a tool. Do you believe that there's a restriction on a two-year limit on when you can file for accelerated disposition under 1515B? Absolutely not, and the face of the statute, again, answers that question. An accelerated disposition request can be filed at any time. It's black and white, so there is no two-year limitation. I've used up my time. If there's any other questions, thank you. Thank you. Mr. Weiss, you have about a minute. Thank you, Your Honor. Customs did allow this protest. It had two years, up from 90 days, to allow or deny protests. At the conclusion of two years, it allowed it. If it didn't want to allow it, it should have expressly denied. With the AFR, the suspension of the AFR, the statute specifically says that Customs cannot go beyond the two years. It says, but subject to the two-year limitation prescribed in the first sentence of this subsection. So Customs does not have an excuse, in this case, for going beyond the two years because Congress told them, specifically in 1515A, you can't do it. With respect, Your Honors, to the consequences of this case, when Hitachi first filed, Customs started liquidating all, this is from what I've been informed, I'm not in Customs, started liquidating, started getting rid of their protests which were pending more than two years. I don't know how many protests now are pending more than two years, if any, but certainly not the sum that there was when Hitachi started. And with respect to the two-year- That's not in the record, is it? No, no, it's nowhere in the record, no. And it's not knowledge that I've acquired, and I don't know how reliable it is, but I think it's pretty reliable. Not on the record, Your Honor, I apologize. And again, with respect to 1515B, the anytime, anytime, that word, it meant any time from which, not any time until which you can file this action. And 1515B was always limited by 1515A. The legislative history is quite clear on that point. Thank you, Your Honors. Thank you. You may submit. Thank you.